IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTHONY HUFFMAN,

        Plaintiff,

vs.

CITY OF RIO RANCHO, *et al.*,

        Defendants.

No. 14-CV-0217-MV-LAM

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion for Summary Judgment Based on Qualified Immunity [Doc. 29] filed by the Individual Defendants in this case. The Court, having considered the Motion, briefs, attached materials, relevant law, and being otherwise fully-informed, finds that Defendants' Motion for Summary Judgment is well-taken and therefore will be **GRANTED.**

### BACKGROUND

As a prefatory note, Plaintiff Huffman has failed to conform his response to local rule 56.1(b) insofar as Plaintiff purports to dispute some of Defendants' facts without citations to the record, does not enumerate the set of facts that he believes remains in contention, and seeks to smuggle additional factual material into his discussion of Defendants' fact number five without listing each added proposition with consecutive letters. Consequently, the Court will endeavor to ascertain which facts before it are genuinely disputed, but it is compelled to treat the majority of Defendants' Statement of Undisputed Material Facts as to Which No Genuine Issue Exists ("DSUMF") as uncontested. *See* D.N.M.LR-CIV.56.1(b) ("Each fact in dispute must be

numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted."). *See also, e.g.*, *United States v. Hopkins*, 927 F. Supp. 2d 1120, 1155 (D.N.M. 2013) ("It is not enough for the party opposing a properly supported motion for summary judgment to rest on mere allegations or denials of his [or her] pleadings.").  With this caveat in mind, the Court finds the facts as follows.

"On March 17, 2013, Officer Railey" of the Rio Rancho Police Department "was dispatched to Plaintiff's resident [sic]" with "Officers [sic] Weaver and Corporal LaPorte" pursuant to a call about a domestic dispute.  DSUMF ¶¶ 1-2.  Upon arriving at the scene, it appears that Officer Weaver entered the home while Corporal LaPorte "remained outside with Plaintiff's wife," Dionne Huffman.  *Id.* ¶ 2.

When Officer Railey first "spoke with the Plaintiff" at the scene, Huffman "refused to give a statement and was apparently intoxicated." *Id.* ¶ 3.  Even so, he "admitted that he had gotten into a physical altercation with his wife." *Id.*  Evidently, Huffman had become "angered" with his wife when she went "outside to smoke a cigarette." *Id.* ¶ 4.  The Court notes that "Plaintiff strongly disputes Defendants' statement of undisputed facts, Nos. 3-8" but repeats that bald denials will not suffice to place Defendants' proffered facts in dispute.  Doc. 31 at 9.

At some point during the dispute, it appears that Ms. Huffman "tried to lock herself in the master bedroom, after which the Plaintiff forced the door open 'to get a blanket.'"  DSUMF ¶ 4.  Plaintiff admitted to the officers that "he pulled the blanket [for which he had been looking] out from under his wife after forcing the door open" with a butter knife at which point a fracas ensued; it is not contested that the couple became physically violent with one another.  *Id.* ¶¶ 5-6.

Here, Ms. Huffman's affidavit may corroborate Defendants' story, as she swears both that she "told officers, [sic] that Mr. Huffman did not strike me in any way, which they ignored" and that "Mr. Huffman used reasonable techniques to defend himself from me, and absolutely did not utilize the same amount of force which [sic] I used on him." Doc. 31 at 9. This declaration, while portraying Ms. Huffman as the aggressor, tacitly admits that that the domestic partners were physically violent with one another on the date in question. *See* Doc. 31-1 ¶¶ 11-12 (Ms. Huffman also notes that Plaintiff used "arm bar technique to restrain me, beneath my chin, but did not in any way attempt to choke me, strangle me, or block the free passage of air" and that he "restrained her on the bed to prevent further, severe injury to himself, as potentially caused by me."). Indeed, while Ms. Huffman's affidavit states that she "was in no real, credible danger when I was locked outside the house for 5 minutes, which occurred following my husband being upset about me smoking" and that the incident had been "meant primarily as a joke," this statement only serves to confirm the outline of events provided by the Defendants. Doc. 31 at 9. Further, Ms. Huffman's affidavit does not suggest either that she told the police that her husband had acted in jest or that anything about the circumstances should have indicated to the officers that Plaintiff was not motivated by genuine frustration, ire, or hostility.

Tellingly, moreover, in the statement Ms. Huffman herself signed on the day of the incident, she recounts how Plaintiff "pulled the blanket off of me" and how after she "pulled back" Plaintiff "heald [sic] me down on the bed with my hand behind my back" and only "when he let me go" did she strike "him in his face." Doc. 29-2 at 1. On her own contemporaneous recollection, therefore, Ms. Huffman implies that her husband was, in fact, the initial aggressor. After the struggle, Ms. Huffman eventually called the police from a gas station, who responded to her request for intervention. DSUMF ¶ 7.

The Court does not credit the recantation in Ms. Huffman's affidavit, not, as Plaintiff crassly suggests, because it accepts "common, antiquated, and sexist stereotypes that a women's [sic] testimony is unreliable by virtue of being female," but because, unfortunately, it is not uncommon for a victim of domestic violence to retract his or her prior statements to legal authorities upon pressure from a domestic partner or family member, including an abuser.  Doc. 31 at 13.  Indeed, in the instant case, the Court is merely electing to rely on Ms. Huffman's initial declaration to police, rather than, as Plaintiff suggests, substituting a man's version of events for Ms. Huffman's.  The Court notes, moreover, that given the posture of the case and the applicable law, the dispute regarding who, in fact, first introduced physical violence into the argument is largely irrelevant.

When the police arrived at the scene, they interviewed both adults present.  Doc. 29 ¶¶ 3-4.  During their "investigation, the officers saw that Ms. Huffman had redness on her arms and an extremely red area under her chin" and "a scratch mark on her left hand."  *Id.* ¶ 8.  The officers ascertained the general contours of the facts described above and Plaintiff was then "placed under arrest for battery on a household member based upon the facts and circumstances presented to the investigating officers and a criminal complaint was filed against him."  *Id.* ¶ 9.

Plaintiff filed suit in the District Court for the Thirteenth Judicial District, County of Sandoval, State of New Mexico on February 10, 2014.  *See generally* Doc. 1.  *See also* Doc. 2-1 at 1.  Defendants timely removed the action to this Court, claiming federal question jurisdiction over the Section 1983 claims.  *Id.*  Plaintiff did not oppose removal of the case.  The Individual Defendants now move this Court for summary judgment, invoking qualified immunity.

## DISCUSSION

### I. Summary Judgment in Qualified Immunity Cases

The well-trod standard on a motion for summary judgment shifts significantly where, as here, the defendants invoke the protection of qualified immunity. *See Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000). In such instances, the plaintiff bears the "heavy two-part burden" of establishing that "the defendant's actions violated a [federal] constitutional or statutory right" and that the right in question "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotation marks omitted). Of course, it is now settled law that the Court may elect "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the plaintiff meets its burden under this framework, the Court then proceeds with its ordinary summary judgment analysis and the burden reverts to the defendant to demonstrate that no genuine issue of material fact exists that would defeat its claim for qualified immunity. *See, e.g.*, *Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993). Here, Plaintiff has failed to demonstrate that Defendants' conduct violated a right secured by federal law, such that the Court need not reach traditional summary judgment analysis.

### II. Alleged Fourth Amendment Violations

The parties have narrowed the question to whether Huffman's arrest was justified by probable cause. The probable cause standard, although vexingly imprecise, is well-settled: "[a] police officer has probable cause to conduct a search [or arrest] when the facts available to [her] would warrant a [person] of reasonable caution in the belief that contraband or evidence of a

crime is present." *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (internal quotation marks omitted); *United States v. Pulliam*, 748 F.3d 967, 971 (10th Cir. 2014) ("Probable cause refers to a probability or substantial chance of criminal activity, based on the commonsense [and] practical considerations of everyday life.") (modification original, internal quotation marks and citation omitted).  Given its reliance on inherently rough, practical determinations, "probable cause is not reducible to precise definition or quantification" and the Supreme Court has "rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach." *Harris*, 133 S. Ct. at 1055. (internal quotation marks omitted).  *Cf. Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("the ultimate touchstone of the Fourth Amendment is reasonableness.") (internal quotation marks omitted).  Importantly, the Court "may not engage in a divide-and-conquer analysis of facts to determine whether probable cause existed" but rather should view all of the factors together.  *United States v. Muñoz-Nava*, 524 F.3d 1137, 1144 (10th Cir. 2008) (internal quotation marks omitted).

   In a qualified immunity case, this analysis is refracted through the prism of Section 1983, such that the Court must evaluate "whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014).  Such "[a]rguable probable cause exists where a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (emphasis original).  Thus, a "defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007).  In essence, this

framework prohibits courts, evaluating police work with the benefit of hindsight, from imposing civil liability in instances where, although an arrest was not supported by probable cause, a reasonable officer could have believed that it was at the time.

Here, Plaintiff alleges that the Individual Defendants violated his Fourth Amendment rights by "searching his belongs [sic], by detaining him, and arresting him without probable cause" and that the "charges lacked probable cause as Defendants had no reasonable information or evidence that Mr. Huffman committed Battery on a Household member." Doc. 20 ¶¶ 66-67. Plaintiff elaborates that Defendants should have known that no crime had been committed because "Plaintiff's wife directly informed Defendants, at the scene, that her husband did not batter her." *Id.* ¶ 71. The Court disagrees.

The Court finds that the officers had arguable probable cause to believe that Huffman had committed the crime of battering a household member, in violation of N.M. STAT. ANN. § 13-3-15 (1978). That statute makes it a misdemeanor to engage in the "unlawful, intentional touching or application of force to the person of a household member, when done in a rude, insolent or angry manner." N.M. STAT. ANN. § 13-3-15 (1978). On the facts available to the officers at the time, a reasonable officer could have believed that probable cause existed to arrest Huffman. The officers had received a call from Ms. Huffman seeking assistance or an escort away from the home, Ms. Huffman undeniably bore red marks on her arms and chin, and Plaintiff admitted that he was intoxicated and had been involved in a physical altercation with his wife, although from descriptions it appears that he bore no visible injuries. Doc. 29 ¶¶ 1-4, 8. Further, her subsequent affidavit notwithstanding, Ms. Huffman told officers on the day of the incident that Plaintiff had initiated the violence and never claimed that her husband had not battered her. *See* Doc. 29-2 at 1. Moreover, despite Ms. Huffman's declaration that her husband "did not strike

[her] in any way" she admits, even in her recantation, that he "utilized an arm bar technique to restrain" her. Doc. 31-1 ¶ 11. Plainly, such physical conduct constitutes an "application of force" as contemplated by the statute. Even if the officers were presented with conflicting information regarding which of the parties instigated the violence, the statute does not appear to require that the party in question be the aggressor and reasonable errors in this sort of determination made after interviewing the suspects obviously fall within the ambit of probable cause, to say nothing of *arguable* probable cause. Thus, there can be no doubt that the officers had arguable probable cause to arrest Huffman for battery of a household member.

Plaintiff's argument that the officers did not conduct an adequate investigation is unavailing. *See* Doc. 31 at 13 ("As established by the evidence, Defendants' have refused or failed to interview the family's children and other eyewitnesses, confirming that Plaintiff did not batter his wife."). The officers interviewed both adults present, each of whom offered stories that demonstrated that the parties had been involved in a physical altercation; Plaintiff himself admitted his involvement in the conflict, although he described his conduct as self-defense. *See* Doc. 29-1 at 1. The Court fails to see how this investigation qualifies as "unreasonable" for Fourth Amendment purposes, nor has Plaintiff met his burden and pointed this Court to factually analogous authority that might guide it. *See, e.g.*, *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015) ("A plaintiff may satisfy this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains" although the case need not be "*perfectly* on-point") (emphasis original, internal quotation marks omitted).

To the contrary, reference to the governing law in this area makes clear that while officers "may not ignore easily accessible evidence and thereby delegate their duty to investigate

8

and make an independent probable cause determination based on that investigation" this obligation extends only to "easily accessible additional evidence that would have further informed" the arresting officer. *Koch v. City of Del City*, 660 F.3d 1228, 1240 (10th Cir. 2011) (internal quotation marks omitted). *See also Romero v. Fay*, 45 F.3d 1472, 1476-77 (10th Cir. 1995) ("the cases state that the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all before invoking the power of warrantless arrest and detention."). Moreover, both adults involved in the dispute had offered congruent accounts of the events that transpired, such that there can be no genuine suggestion that any of the officers "would have discovered anything materially different than" what he already knew and there is no requirement that the police interview every potential witness or exhaust every possible avenue of investigation prior to attaining sufficient probable cause to justify an arrest. *Koch*, 660 F.3d at 1240.

By the same token, because the officers had probable cause to believe that Huffman battered his wife, Defendant Railey violated no provision of federal law by swearing to the facts adduced in the Criminal Complaint, which mirror those described above. *See Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) ("a § 1983 malicious prosecution claim includes the following elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."). *See also* Doc. 29-3; Doc. 20 ¶¶ 72-75. Consequently, the Individual Defendants are entitled to summary judgment predicated on qualified immunity on Plaintiff's Section 1983 claims.

### III. Section 1983 Municipal Liability

Defendant City of Rio Rancho has not joined the Individual Defendants' Motion. However, in the interest of disposing this matter efficiently, the Court will, *sua sponte*, dismiss the Section 1983 claim against the City of Rio Rancho. Stated simply, because the Court finds that none of the officers violated federal law, no liability can attach to the Defendant municipality. *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (even where a suit alleges an illegal municipal policy, "a municipality may not be held liable where there was no underlying constitutional violation by any of its officers."). *See also Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1104 (10th Cir. 2009) (same). Thus, Defendant Rio Rancho is entitled to judgment as a matter of law on Plaintiff's Section 1983 claims.

### IV. State Law Claims

Plaintiff has also pled claims arising from the New Mexico Tort Claims Act, the New Mexico Constitution, and, potentially, a municipal liability claim arising from these alleged violations of New Mexico law. As each of these remaining causes of action is a creature entirely of state law, the Court is permitted to remand the remainder of the action to state court. *See* 28 U.S.C. § 1367(c)(3). Here, the Court will accede to the Tenth Circuit's request that the district courts "should decline the exercise of jurisdiction by dismissing the case without prejudice" where all federal law claims are dismissed before trial. *Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010). That is, "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal quotation marks omitted). The Court perceives no circumstances in this case that counsel it to reject the ordinary rule in this circuit

and exercise jurisdiction over an action now predicated entirely on state law; therefore, the Court will remand the remaining claims in this case to state court.

## CONCLUSION

None of the Individual Defendants violated clearly-established federal law. Consequently, Plaintiff cannot maintain a Section 1983 suit against either the Individual Defendants or the City of Rio Rancho. Absent a federal question, the Court will remand the remaining claims for resolution in New Mexico state court.

**IT IS THEREFORE ORDERED** that the Individual Defendants' Motion for Summary Judgment Based on Qualified Immunity [Doc. 29] is well-taken and therefore will be **GRANTED**, and that the rest of the suit will be **REMANDED** to state court.

Dated this 6th day of July, 2015.

_____
**MARTHA VAZQUEZ**
UNITED STATES DISTRICT JUDGE

**Derek V. Garcia**
Law Office of Derek V. Garcia, P.C.
P.O. Box 53603
Albuquerque, NM 87153
*Attorney for the Plaintiff*

**James P. Lyle**
Law Offices of James P. Lyle P.C.
1116 2nd St. NW
Albuquerque, NM 87102
*Attorney for the Defendants*